IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON PETERS, | |
| *Plaintiff*, | Civil Action No. 2:18-cv-732 |
| v. | Hon. Peter J. Phipps |
| UNIVERSITY OF PITTSBURGH, | Re: ECF Nos. 27, 30, 32, 41, 44 |
| *Defendant*. | |

**MEMORANDUM OPINION**

PHIPPS, District Judge.

This case involves an employment dispute between the University of Pittsburgh (the University) and its former head wrestling coach, Jason Peters. As plaintiff, Peters has sued the University for breach of his employment contract, for due process violations, and for race discrimination in violation of a federal civil rights statute. There are five motions pending before the Court. Four concern the sealing or unsealing of documents based on confidentiality provisions in the employment contract. The fifth is the University's motion for partial judgment on the pleadings, in which the University argues that plaintiff's due process and race discrimination counts fail to state a claim for relief. This memorandum opinion and the ensuring order resolve those pending motions.

**STANDARDS OF REVIEW**

The four motions to seal or unseal court are not governed by the same legal standards as the motion for judgment on the pleadings. No statute or rule of civil procedure defines the materials that a court may consider in evaluating motions to seal or unseal. Accordingly, the factual record for motions to seal or unseal is comprised of the information sought to be sealed or

1

unsealed, along with additional evidence admissible under the Federal Rules of Evidence. *See Rep. of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (holding that a party that "failed to offer evidence . . . to substantiate its claim that disclosure . . . would result in any type of competitive disadvantage," did not meet the burden to seal documents); *see also* Fed. R. Evid. 1101 (setting forth the general scope and broad applicability of the rules of evidence).

In contrast, there are specific standards that define how a court must construe the factual record in evaluating a Rule 12(c) motion for judgment on the pleadings. As the Third Circuit has explained, "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Under those standards, a court is to construe the allegations in the non-moving party's pleadings as true – regardless of whether the moving party has denied those allegations in its answer or other pleading – to evaluate whether a claim is plausible. *See DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008) ("The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements."); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a claim is plausible when its factual content allows the court to draw a reasonable inference that defendant is liable for misconduct alleged); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that under the Rule 12(b)(6) standard, after all of the factual and legal elements have been separated, a court must determine whether the allegations demonstrate a plausible claim for relief); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1367, 1368 (3d ed. Sept. 2018 update).

Because the University's motion for judgment on the pleadings is potentially dispositive of several counts, the factual background set forth below is based on the allegations in the Complaint. Additional facts relevant to the motions to seal and unseal are provided in conjunction with the analysis of those motions.

**FACTUAL BACKGROUND**

In 2015, plaintiff and the University entered an employment contract for plaintiff to serve as the Head Coach of the University's wrestling team. *See* Compl. ¶ 21;[1] Pl.'s Employment Contract, Ex. A to Compl. at 1, ECF No. 2. The contract set forth plaintiff's job duties, responsibilities, and salary, and it also contained confidentiality provisions. The contract was for a four-year term, from July 1, 2015, until June 30, 2019, but it contained two termination clauses under which the University could shorten the term of plaintiff's employment. *See* Employment Contract, Ex. A to Compl. at 2, 16-19. Under the first termination clause, the University could terminate plaintiff for just cause without further financial obligation. *Id.* at 16-17. Under the second termination clause, the University could terminate plaintiff without just cause, but if it exercised that option, the University would be obligated to pay plaintiff liquidated damages, potentially for the remainder of the contract term. *Id.* at 18-19.

On January 19, 2017, the University terminated plaintiff's employment contract, claiming just cause for the termination. *See* Compl. ¶ 52. That decision followed a wrestling tournament in Evanston, Illinois, in December 2016, at which there was a late-night incident in a hotel room with members of the wrestling team. *See id.* ¶¶ 25-29, 44. One of those wrestlers called the police, and plaintiff, who was staying at the same hotel, learned of the incident shortly after it occurred. *See id.* ¶¶ 27-29. Based on his understanding from the police officers who responded

---

[1] All citations to the Complaint are to the unredacted version on file with the Court.

to the call, plaintiff believed that nothing illegal had taken place. *See id.* ¶¶ 30-33. Nonetheless, in the ensuing days, plaintiff spoke with members of the wrestling team and assistant coaches, and, as a remedial measure, plaintiff implemented a new team policy. *See id.* ¶¶ 34-36, 39. Plaintiff also informed his supervisor, the Senior Associate Assistant Director of the Athletic Department, that there had been an incident with the team in Evanston and that he had implemented a new team policy as a result. *See id.* ¶¶ 37, 40. Plaintiff and his supervisor were to "circle back" about the incident, but did not do so until January 13, 2017, after the University had received an anonymous call reporting additional details about the incident that plaintiff had not relayed to his supervisor. *See id.* ¶¶ 41-45. Over the next several days, other members of the University's Athletic Department and its Internal Affairs Department met with plaintiff, and ultimately the University terminated plaintiff, claiming just cause on the grounds that plaintiff intentionally withheld information about the incident from the University. *See id.* ¶¶ 48-52.

Based on his termination, plaintiff sued the University in this action for six counts: (I) Breach of Contract; (II) Violation of Pennsylvania's Wage Payment and Collection Law; (III) Liability under 42 U.S.C. § 1983 for Deprivation of Property without Substantive Due Process; (IV) Liability under 42 U.S.C. § 1983 for Deprivation of Liberty without Due Process; (V) Liability under 42 U.S.C. § 1983 for Deprivation of Property without Procedural Due Process; and (VI) Racial Discrimination in Terminating a Contract. The Complaint was filed in redacted form, and several other docket entries in this case have been filed under seal based on the confidentiality provisions in plaintiff's employment contract. The University answered the Complaint and moved for judgment on the pleadings on the three due process claims (Counts III, IV, and V) and the racial discrimination claim (Count VI).

## ANALYSIS

A.  **The Motions to Seal or Unseal Documents**

This case has generated significant docket activity on whether documents should be subject to seal. In the first six months, there were 17 docket entries consisting of motions, briefing, and orders regarding requests to seal or unseal documents with the Court. Of the six motions seeking either to seal or to unseal documents,[2] two have been resolved, albeit temporarily, to permit filing under seal.[3] Despite the range of issues implicated in the briefing, such as the distinction between a party's contractual duty of confidentiality and the Court's independent consideration of whether a matter should be sealed, oral argument had a distilling effect so that only one issue remains in dispute: whether the terms of plaintiff's annual salary from July 1, 2015, through June 30, 2019, should remain sealed. Resolution of that issue will assist in determining which documents, if any, should remain under seal.

There is a long-standing presumption in favor of the openness of judicial proceedings. *See Rep. of Phil.*, 949 F.2d at 659 ("[T]he principle that the public holds a common law right of access to judicial proceedings and judicial records is firmly accepted in this circuit."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) ("A presumption of openness inheres in civil trials as in criminal trials."); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents."); *United States v. Erie Cty.*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The

---

[2] Def.'s Mot. for Leave to File Documents Under Seal, ECF No. 7; Mot. for Leave to File Documents Under Seal, ECF No. 20; Pl.'s Mot. to Unseal Compl., ECF No. 30; Pl.'s Mot. for Leave to File Documents Under Seal, ECF No. 32; Def.'s Mot. for Leave to File Documents Under Seal, ECF No. 41; Pl.'s Mot. for Leave to File Documents Under Seal, ECF No. 44.

[3] Order Granting Def.'s Aug. 3 Mot. for Leave to File Documents Under Seal, ECF No. 13; Order Granting Def.'s Sept. 4 Mot. for Leave to File Documents Under Seal, ECF No. 24.

notion that the public should have access to the proceedings and documents of courts is integral to our system of government."); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 161-62 (3d Cir. 1993) (citing out-of-circuit cases that also recognize "the principle that the filing of a document gives rise to presumptive right of public access"). While openness is the expectation, court proceedings may be sealed upon certain showings. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("Although our courts recognize a general common law right to inspect and to copy judicial records and documents, the right is not absolute."). Specifically, the party seeking to seal court information bears a heavy burden of demonstrating (i) "that 'the material is the kind of information that courts will protect,'" and (ii) "that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (quoting *Publicker Indus.*, 733 F.2d at 1071).

Plaintiff's annual salary information satisfies the first element for sealing. Employee compensation may constitute confidential business information. *See In re High-Tech Emp. Antitrust Litig.*, 2013 WL 163779, at *9 (N.D. Cal. Jan. 15, 2013); *see also Energy Intelligence Grp., Inc. v. Canal Barge Co. Inc.*, 2013 WL 12228985, at *6 (E.D. La. Oct. 28, 2013) (recognizing the confidentiality of employee compensation). And confidential business information is a kind of information that courts have been willing to protect through seal. *See Rep. of Phil.,* 949 F.2d at 663 ("[T]he potential effects of the disclosure of business information that might harm the litigant's competitive standing may in some cases meet the burden of the judicial record under seal." (quoting *Rep. of Phil. v. Westinghouse Elec. Corp.*, 139 F.R.D. 50, 61 (D.N.J. 1991))); *Leucadia,* 998 F.2d at 166 ("Documents containing trade secrets or other confidential business information may be protected from disclosure . . . [if] the need for secrecy outweighs the presumption of access that normally attaches to such documents."); *Sabinsa Corp.*

6

*v. Herbakraft, Inc.*, 2017 WL 3331773, at *2 (D.N.J. Aug. 4, 2017) (sealing details of manufacturing process as confidential business information).

The second element cannot be satisfied here, however, because there is insufficient evidence that the disclosure of plaintiff's annual salary information would work a clearly defined and serious injury to the University. Although the University argues that disclosure of such information would "adversely affect [its] ability to negotiate future employment agreements and would harm the University's relationship with current employees,"[4] the University supplies no sworn statement or other evidence in support of that position. Moreover, courts in this Circuit have frequently recognized that the need to preserve business information as confidential tends to diminish with time.[5] That consideration carries substantial weight here, not only because

---

[4] Br. in Supp. of Mot. to File Am. Answers Affirmative Defenses & Countercls. under Seal 3, ECF No. 21.

[5] *See Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) ("Things that typically weigh against the necessity of sealing include that the information is old . . . ."); *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 512 (D. Del. 2012) ("Defendants have failed to demonstrate how the disclosure of non-financial terms from . . . agreements [more than five years old] could cause a serious injury to current or future . . . negotiations."); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 485 (D.N.J. 1990) (noting that the "purported need for protection is substantially diminished where the passage of time has made such documents stale" and deciding against offering protection to insurance policies underwritten between seven and thirty years before 1990); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 331 (D. Del. 1986) (noting that the information at issue was "two to three years old" and that the party failed to show "that disclosure of this old information at this time will harm it"); *see also Larry Pitt & Assocs. v. Lindy Law, LLP*, 2018 WL 5846342, at *5 (E.D. Pa. Nov. 7, 2018) (recommending unsealing because "the most recent of this information is nearly three years old and . . . the [party has] been unable to . . . demonstrate any facts which suggest a colorable basis for protection from disclosure"); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2013 WL 1336204, at *9 (W.D. Pa. Mar. 29, 2013) ("Disclosure of such past profit analysis, sales figures, and other financial data has not been shown to cause the *current* competitive harm that sealing is intended to prevent."); *Opperman v. Allstate N.J. Ins. Co.*, 2009 WL 3818063, at *9 (D.N.J. Nov. 13, 2009) ("Although Allstate undoubtedly has good reason to prefer that these documents not become public, Allstate's continued insistence today that the confidentiality of these documents is imperative—five years after the termination of its business relationship with Home Depot—lacks credibility. At the very least, these documents' age and attenuated bearing upon Allstate's current operations strongly mitigate Defendants' interest in

plaintiff's contract was negotiated in 2015, but also because the University hired a new head wrestling coach following plaintiff's discharge. It is also noteworthy that the University has certain responsibilities under Pennsylvania's Right to Know Law, including the obligation to disclose the salaries of its highest-paid 25 employees – several of whom work in the Athletic Department. *See* 65 PA. STAT. AND CONS. STAT. ANN. § 67.1503 (West 2018). While the greater does not necessarily include the lesser,[6] if the salaries of higher-paid coaches must be made public by state law, it would require evidence of a serious financial harm to the University to justify sealing the salaries of lower-paid coaches. But the University has not come forth with evidence of any such harm. For these reasons, the University has not satisfied the heavy burden needed to justify sealing the salary terms in plaintiff's employment contract. *See In re Cendant Corp.*, 260 F.3d 183, 196 (3d Cir. 2001) ("[C]ontinued sealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm they claim." (internal quotation marks and alterations omitted)); *Mine Safety*

---

maintaining their confidentiality."); *Zavala v. Wal-Mart Corp.*, 2007 WL 2688934, at *9-10 (D.N.J. Sept. 12, 2007) ("[T]he materials date back to more than three years ago, supporting the stale nature of these documents. Accordingly, release of such stale information is unlikely to harm any 'future negotiations' between Wal-Mart and third-party contractors or give Wal-Mart competitors a future competitive advantage in hiring third-party contractors."). *But see Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 891-92 (E.D. Pa. 1981) ("[I]t is terribly difficult to establish, on any principled basis, temporal boundaries governing the protection to be accorded information. While at first blush one might doubt that harm could be caused by the disclosure of stale information, there is sense in the argument . . . that old business data may . . . reveal a business' current strategy, strengths, and weaknesses. It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes.").

[6] Michael Herz, *Justice Byron White and the Argument that the Greater Includes the Lesser*, 1994 BYU L. Rev. 227, 227 (1994) ("The proposition that the greater includes the lesser is tremendously attractive to lawyers and judges. It satisfies the desire for logic, proof, and coherence. It sounds right. It is also a trap. That does not mean that it is always false. Were that so, it would not be much of a trap. It is a trap because it is only sometimes true.").

*Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 562 (W.D. Pa. 2014) ("Any order of continued sealing must be based on current evidence to show how public dissemination of the pertinent materials will continue to cause the competitive harm claims." (internal quotation marks and alterations omitted); *see also Olvera v. Mazzone Mgmt. Grp. Ltd.*, 2018 WL 2137882, at *3 (N.D.N.Y. May 9, 2018) (denying a motion to seal confidential employee compensation information where the moving party "failed to make a showing sufficient to overcome the presumption of public access"). Consequently, all previously sealed docket entries shall be unsealed on the 21st day following the date of this order.

**B.     The University's Motion for Judgment on the Pleadings on Plaintiff's Due Process Claims (Counts III, IV, and V)**

The Due Process Clause of the Fourteenth Amendment provides constitutional protections for persons when state actors deprive them of any of three rights: life, liberty, or property. U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law"). Here, plaintiff claims that the University, as a state actor, deprived him of two of those rights – property and liberty – without due process, and he sues the University for those alleged violations under 42 U.S.C. § 1983. *See generally* 42 U.S.C. § 1983 (permitting a cause of action against any person, who, under color of State law, deprives a citizen or person within the jurisdiction of the United States of "any rights, privileges, or immunities secured by the Constitution and laws"). Specifically, plaintiff asserts that by terminating his employment contract, the University deprived him of a property right without either procedural due process (Count V) or substantive due process (Count III). Plaintiff further claims that the University's press release created a false and defamatory impression of him, which when coupled with his termination, deprived him of a protected liberty interest

9

(Count IV). The University counters by moving for judgment on the pleadings, arguing that it did not deprive plaintiff of either a property or liberty interest.

### 1. Allegations of a Deprivation of a Property Interest Without Procedural Due Process

In Count V, plaintiff claims that the University deprived him of a property interest without procedural due process by terminating his employment contract. Procedural due process guarantees the adequacy of governmental procedures used to deprive a person of life, liberty, or property. A procedural due process claim under 42 U.S.C. § 1983 against a state actor has two elements: (i) the deprivation of a life, liberty, or property interest (ii) without procedures sufficient to provide due process of law. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The first element examines whether there has been a deprivation of a constitutionally protected interest because "*no* process is due if one is not deprived of 'life, liberty, or property.'" *Kerry v. Din*, 135 S. Ct. 2128, 2132 (2015); *see Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) ("It is elementary that procedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest."). In evaluating the second element, the Supreme Court has acknowledged that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Those procedural protections commonly include the right to advance notice and a meaningful opportunity to be heard. *See id.* at 486-88; *Abbott*, 164 F.3d at 146 ("At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard."); *cf. Gilbert v. Homar*, 520 U.S. 924, 933 (1997) (holding that the State had no constitutional obligation to provide a pre-suspension hearing for an employee charged with a felony); *Daniels v. Williams*, 474 U.S. 327, 333 (1986) ("Where a government official's act causing injury to life,

liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally required.*'" (quoting *Parratt v. Taylor*, 451 U.S. 527, 548 (1981))). In moving for judgment on the pleadings as to Count V, the University challenges only the first element, the deprivation of a protected property interest in his employment.

The Supreme Court has determined that the property subject to procedural due process protections extends beyond "actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972). The Third Circuit has explained that "it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000). Similarly, under Third Circuit precedent, a person may have a property interest in public employment if that person has "more than a unilateral expectation of continued employment," but instead has "a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Putting those pieces together, the procedural due process protection extends to employment contracts with units of state government, provided that the contract contains a for-cause termination clause. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (recognizing a property interest in employment governed by a statutory for-cause protection); *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) (explaining that a property interest arises if a contract "includes a provision that the state entity can terminate the contract only for cause"); *see also Perry v. Sinderman*, 408 U.S. 593, 601 (1972) ("A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown."); *cf. Biliski v.*

11

*Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (explaining that an at-will employee lacks a property interest in public employment).

Plaintiff's contract with the University had a for-cause clause (a "just-cause" clause to be precise), *see* Employment Contract, Ex. A to Compl. at 16-17, and the University is alleged to have terminated plaintiff for just cause, *see* Compl. ¶ 52. Those allegations suffice to state a deprivation of a property interest for purposes of a procedural due process claim. That is so because, construing those allegations in the light most favorable to plaintiff, it may be reasonably inferred that plaintiff was terminated pursuant to the just-cause clause, which confers a property interest to plaintiff in his employment, and not the unilateral-termination clause, which allows termination without just cause accompanied by payments of liquidated damages, *see* Employment Contract, Ex. A to Compl. at 18. *See Unger*, 928 F.2d at 1399 (3d Cir. 1991); *see also Haywood v. Univ. of Pittsburgh*, 2012 WL 591746, at *4 (W.D. Pa. Feb. 22, 2012) (concluding that termination pursuant to a similarly structured contract did not constitute a deprivation of constitutionally protected property interest). Because the University has not advanced any argument as to the sufficiency of the procedural safeguards provided to plaintiff prior to the termination of his contract, Count V survives judgment on the pleadings.

### 2. Allegations of a Deprivation of a Property Interest Without Substantive Due Process

In addition to procedural protections, the Due Process Clause also contains a substantive component that "limits what government may do regardless of the fairness of the procedures that it employs." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Boyanowski v. Capital Area Interm. Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). The substantive due process protection manifests itself differently in the context of legislative actions and non-legislative state actions. *See Nicholas*, 227 F.3d at 139. Because plaintiff challenges non-legislative action, the threshold

inquiry is whether he "has a protected property interest to which the Fourteenth Amendment's due process protection applies." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 399 (3d Cir. 2003) (quoting *Woodwind Estates Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000), *abrogated on other grounds by id.* at 400-01)).

That may appear to be the same threshold inquiry as for procedural due process claims, but there is a critical difference. As the Third Circuit has explained, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). Rather, to be subject to substantive due process protections, a property interest must be "fundamental" under the United States Constitution. *Nicholas*, 227 F.3d at 140, 142. And the Third Circuit has "limited non-legislative substantive due process review to cases involving real property ownership." *Id.* at 141; *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) ("[T]he only protected property interests we have thus far deemed fundamental involved ownership of real property.").

Under that legal framework, plaintiff does not state a substantive due process claim. Plaintiff is not suing over an interest in real property; plaintiff's alleged deprivation is the University's termination of his employment contract under the just-cause provision. Because plaintiff does not claim the deprivation of real property, the University's motion for judgment on the pleadings is granted as to Count III. *See Nicholas*, 227 F.3d at 143 (determining that an

interest in a tenured employment with a public employer did not constitute a property interest for substantive due process purposes).

### 3. Allegations of a Deprivation of a Protected Liberty Interest Without Procedural Due Process

In Count IV, plaintiff claims that the University's press release coupled with his termination deprived him of a protected liberty interest under the Fourteenth Amendment. The Third Circuit has succinctly summarized the relevant scope of this constitutional protection:

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). Under the stigma-plus test, when a public employer terminates an employee *and* makes a public statement that creates a false and defamatory impression of the employee, that employee has been deprived of a constitutionally protected liberty interest.

At issue is the question of whether the University's press release in connection with plaintiff's termination created a false and defamatory impression of plaintiff. As alleged, the press release contained two sentences in which the University contextualized and explained plaintiff's termination:

> On the morning of January 13, the Pitt Athletic Department became aware of an incident that took place during the wrestling team's trip to Illinois for a competition on December 29-30. An investigation was immediately launched and, while the details of that process will remain private, the university was compelled by its findings to make a change in the program's leadership.

Compl. ¶ 82.

The parties dispute whether the individual statements in the press release are false and defamatory. Plaintiff contends that they are, and he argues that the Athletic Department likely

became aware of the incident before January 13. The University responds that January 13 is the date upon which it became fully aware of the incident's scope. Plaintiff next claims that the details of the process did not remain private and that the University was not compelled to terminate him. But those statements issued by the University reflect its perspective. Thus, taken individually, the statements in the press release do not rise to the level of false and defamatory statements. *See McCarthy v. Darman*, 372 F. App'x 346, 351 (3d Cir. 2010) (holding that a plaintiff's liberty interest was not deprived by public statements that, while potentially unflattering, were not false); *see also Young v. Kisenwether*, 902 F. Supp. 2d 548, 559 (M.D. Pa. 2012) ("[S]tatements concerning competency or job performance are insufficient to satisfy the stigma requirement to state a due process deprivation of liberty interest claim.").

That line-by-line review does not end the inquiry because "even where a publication is literally true," a plaintiff may still establish falsity "by showing that a defendant 'selectively printed or broadcast true statements or pictures in a manner which created a false impression.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136-37 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. 1988)). Taken as a whole, the press release contains a critical ambiguity: whether plaintiff was terminated for the incident or for his response to the incident. The impact on plaintiff's reputation would be quite different if the press release is read to suggest that he was terminated for his own direct misconduct, as opposed to that he was terminated for a failure to notify the University of the misconduct of student-athletes under his supervision. The former would be plausibly false and defamatory on this record; the latter would not be. It may be that when placed in its full factual context, that ambiguity will be resolved such that the press release is neither false nor defamatory. Based on the allegations in the Complaint, *see* Compl. ¶¶ 81-82, however, it is plausible to construe the press release as

15

suggesting that plaintiff was terminated for direct involvement in the incident as opposed to his response to the incident. Consequently, the University's motion for judgment on the pleadings as to Count IV is denied.

    **C. The University's Motion for Judgment on the Pleadings for Plaintiff's Statutory Race Discrimination Claim (Count VI)**

In Count VI, plaintiff claims that the University terminated his employment contract based on his race in violation of 42 U.S.C. § 1981. The University contends that Count VI fails because it does not expressly mention 42 U.S.C. § 1983, which provides a mechanism for suing state actors for constitutional and statutory violations.[7] And without a reference to § 1983, the University argues, Count VI does not state a claim because § 1981 does not constitute a cause of action directly against a state actor.[8] While the University's argument accurately assesses the legal operation of sections 1981 and 1983, the legal sufficiency of a complaint is not analyzed so strictly at this stage; instead, the Complaint is evaluated under notice pleading standards. *See generally* Fed. R. Civ. P. 8(a)(2). Under notice pleading, a plaintiff need not expressly invoke § 1983 to state a claim for a violation of constitutional or statutory rights. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."). Accordingly, the University's motion for judgment on the pleadings as to Count VI is denied.

---

[7] *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (explaining that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred"); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 n.2 (3d Cir. 2017).

[8] *See McGovern v. City of Phila.*, 554 F.3d 114, 120-21 (3d Cir. 2009) (holding that no implied private right of action exists against state actors under 42 U.S.C. § 1981).

# CONCLUSION

For the reasons set forth in the memorandum opinion, the motions pending before the Court are resolved as follows. Plaintiff's Motion to Unseal the Complaint, ECF No. 30, is GRANTED. Plaintiff's Motion for Leave to File an Unredacted Response to University's Counterclaim Under Seal, ECF No. 32, is DENIED. The University's Motion for Leave to File its Response to Plaintiff's Motion to Unseal Under Seal, ECF No. 41, is DENIED. Plaintiff's Motion for Leave to File an Unredacted Response in Opposition to University's Motion for Judgment on the Pleadings Under Seal, ECF No. 44, is DENIED. On the 21st day following entry of the order accompanying this memorandum opinion, all documents previously subject to seal shall be unsealed. The University's Motion for Judgment on the Pleadings, ECF No. 27, is GRANTED as to Count III, and DENIED as to Counts IV, V, and VI.

**January 4, 2019**　　　　　　　　　　　　　　　　/s/ *Peter J. Phipps*
　　　　　　　　　　　　　　　　　　　　　　　　Peter J. Phipps
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge